**Electronically Filed
Supreme Court
SCAP-17-0000325
18-MAR-2019
07:57 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

STEPHANIE SHEVELAND, Plaintiff-Appellant,
vs.
WELLS FARGO BANK, N.A., Defendant-Appellee,
and
MASOOD M. FOADI; FAHI S. FOADI; MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; CIT BANK, N.A., formerly known as
ONEWEST BANK, FSB; OWB REO LLC, and DOE DEFENDANTS 1-50,
Defendants-Appellees.

_____

SCAP-17-0000325

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CAAP-17-0000325; CIV. NO. 16-1-0262(1))

MARCH 18, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

Dentons represents itself as the world's largest law firm. Dentons US LLP maintains offices throughout the United States, including, as of July 2018, an office in Hawai'i comprising the

former partners (and other employees) of the former Hawai'i law firm Alston Hunt Floyd & Ing ("AHFI").  Prior to joining Dentons US LLP as partners, the AHFI partners incorporated themselves into separate lawyers' professional business organizations.  See Declaration of Paul Alston ("[T]he lawyers who were to become partners in Dentons US LLP form[ed] their own individual law corporations and ha[d] those corporations become partners in Dentons.").

Dentons US LLP represents Defendant-Appellee CIT Bank in this appeal, through two former AHFI partners who are Hawai'i-licensed.  During the course of the appeal, Dentons US LLP, through these two partners, filed a motion for admission pro hac vice of a California attorney with a different law firm. Counsel for Plaintiff-Appellant Stephanie Sheveland ("Sheveland") opposed the motion, alleging that Dentons US LLP, as a firm, was engaged in the unauthorized practice of law in Hawai'i, in violation of Hawai'i Revised Statutes ("HRS") § 605-14 (2016), which provides the following, in relevant part:

> It shall be unlawful for any person, firm, association, or corporation to engage in or to attempt to engage in or to offer to engage in the practice of law, or to do or attempt to do or offer to do any act constituting the practice of law, except and to the extent that the person, firm, or association is licensed or authorized so to do by an appropriate court, agency, or office or by a statute of the State or of the United States. . . .

This court is the "appropriate court" authorizing the practice of law in this state.  See Haw. Const. art. VI, § 7 ("The

supreme court shall have power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals, which shall have the force and effect of law.").

The specific court rule governing the organized practice of law in Hawai'i is Rule 6 of the Rules of the Supreme Court of Hawai'i ("RSCH"), titled "Lawyer's Professional Business Organizations," which provides, in relevant part, as follows:

> **(a) Compliance with this rule and applicable statutes**. Any person or persons seeking to practice law as a corporation, a company, an association, in partnership, or in some other lawful organizational form (hereafter, lawyers' professional business organization) shall comply with the provisions of this rule and[,] if applicable[,] statutes.
> . . . .
> **(d) Shares; ownership and transfer.**
> (1) Shares or interests in a lawyers' professional business organization may be owned only by a lawyers' professional business organization or by one or more persons licensed to practice law in this state by this court. . . .
> . . . .
> **(e) Directors**. Notwithstanding any statutory provisions, each director of a lawyers' professional business organization shall be licensed to practice law in this state by this court. . . .
> **(f) Officers**. Notwithstanding statutory provisions, each officer of a lawyers' professional business organization shall be licensed to practice law in this state by this court. . . .

RSCH Rule 6 (2001). Sheveland contends that the language of RSCH Rule 6 requires every partner of Dentons US LLP to be Hawai'i-licensed. Sheveland argues that, without such a requirement, non-Hawai'i-licensed attorneys could direct the activities of Hawai'i-licensed attorneys in a Hawai'i firm

3

without regulation or oversight by this court or the Office of Disciplinary Counsel.  She asserts that Dentons US LLP is "majority owned by persons not licensed to practice law in Hawai'i," in violation of the rule.  Sheveland asserts that the Hawai'i-licensed attorneys appearing in this appeal "should be barred from stating or representing that they are practicing or appearing as part of 'Dentons US LLP.'"

CIT Bank counter-argues that Sheveland's interpretation of RSCH Rule 6 contradicts the rule's plain text, purpose, and history.  As to Rule 6(d)(1)'s plain language, CIT Bank asserts that shares or interests in a law firm can be owned either by another lawyer's professional business organization or by one or more Hawai'i-licensed attorneys:

> **(d) Shares; ownership and transfer.**
> (1)  Shares or interests in a lawyers' professional business organization may be owned only by a lawyers' professional business organization or by one or more persons licensed to practice law in this state by this court. . . .

CIT Bank points out that the "one or more persons" language allows a Hawai'i law firm to be owned by non-Hawai'i-licensed attorneys and a minimum of one Hawai'i-licensed attorney.  Were the rule to require that only Hawai'i-licensed attorneys could own law firms practicing in Hawai'i, CIT Bank argues, the phrase "one or more" would have to be omitted from the rule.

CIT Bank next turns to the history of RSCH Rule 6.  CIT Bank argues that when the rule was first promulgated, there were

4

no express jurisdictional limitations contained in the statutes the rule referenced (namely, HRS Chapter 416, the Hawaiʻi Professional Corporation Law, and Chapter 605, the chapter governing attorney licensure in Hawaiʻi).  Instead, CIT Bank argues, the statutes "reflected an intent only to limit management and control of professional corporations to licensed individuals."  CIT Bank also points out that the rule was not updated after the repeal of the Hawaiʻi Professional Corporation Law in 1987 and its replacement with the Professional Corporation Act.  The Professional Corporation Act expressly provided that corporate shares could be owned by anyone in the United States, its territories, and the District of Columbia.

CIT Bank further argues that Sheveland's interpretation is inconsistent with other court rules that contemplate multi-jurisdictional law firm practice in Hawaiʻi.  CIT Bank cites to RSCH 11(b) (2016), which requires firms composed "in whole or in part" by Hawaiʻi-licensed attorneys to participate in the IOLTA program.  It also notes that Hawaiʻi Rules of Professional Conduct ("HRPC") Rule 7.5 (2014) similarly permits multi-jurisdictional law firm practice, as it requires Hawaiʻi law firm

letterheads to indicate which attorneys are not licensed to practice in Hawai'i.[1]

CIT Bank also points out that this court's ethical rules once prohibited Hawai'i law partnerships from including any person not licensed to practice law in Hawai'i.  See Hawai'i Code of Professional Responsibility ("HCPR") Disciplinary Rule ("DR") 2-102(D) ("A partnership shall not include any person not licensed to practice law in the courts of the State of Hawaii."); see also HCPR Ethical Consideration ("EC") 2-11 ("No partnership for the practice of law in the State of Hawaii may include a member who is not admitted to practice in the courts of the State of Hawaii.").  Over 30 years ago, however, those rules were deleted.  Lastly, CIT Bank asserts that statutes on similar subject matter, namely the licensure of Hawai'i professionals organized into corporations, do not limit ownership of corporate shares to just Hawai'i-licensed individuals.  See HRS § 415A-9(a) (2004) ("A professional corporation may issue shares . . . only to individuals authorized by law in this State or in any other state or territory of the United States or the District of Columbia to

---

[1]    CIT Bank also argues that Sheveland's interpretation of RSCH Rule 6 renders the rule unconstitutional under the United States Constitution's Commerce Clause and Privileges and Immunities Clause.  As we dispose of the RSCH Rule 6 challenge using canons of interpretation, we do not address the constitutional issues.

<u>render a professional service</u> permitted by the corporation's articles of incorporation.") (emphasis added).

Amicus Curiae Federal National Mortgage Association ("FNMA") filed a substantive joinder to CIT Bank's reply brief. FNMA is represented by Carlsmith Ball, a multi-jurisdictional law firm with offices in Hawai'i and California (and, in the past, Guam). FNMA points out an inconsistency within RSCH Rule 6: amendments to the rule to expressly include law partnerships inadvertently retained jurisdictional limitations initially intended for law corporations. FNMA submits that Carlsmith Ball was properly formed as a law partnership before this change to RSCH Rule 6 occurred. FNMA posits that the rule change "inadvertently divested properly formed partnerships like Carlsmith Ball, which had partners licensed in other jurisdictions, of their legitimate business interests," in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. FNMA adds that it was "highly doubtful" that this court would have amended RSCH Rule 6 in a manner exposing it to constitutional challenge.

This court issued an order granting Dentons US LLP's motion for pro hac vice admission and stating that an opinion on the RSCH Rule 6 issue would be forthcoming. This opinion now addresses the issue. We hold that the following underlined portions of RSCH Rule 6 have been superseded, by implication, by

other rules of this court that permit law firms composed of Hawai'i-licensed and non-Hawai'i-licensed attorneys to practice law in Hawai'i, to mean "in this state or in any other state or territory of the United States or the District of Columbia":

> (e) **Directors**.  Notwithstanding any statutory provisions, each director of a lawyers' professional business organization shall be licensed to practice law <u>in this state by this court</u>.  A lawyers' professional business organization that has only one shareholder need have only one director who shall be such shareholder.
>
> (f) **Officers**.  Notwithstanding statutory provisions, each officer of a lawyers' professional business organization shall be licensed to practice law <u>in this state by this court</u>, except as provided in this subsection (f).  If a lawyers' professional business organization is incorporated with a single shareholder and a single director after July 1, 1987, or if a lawyers' professional business organization converts to having a single shareholder and a single director after that date, the person or persons holding the offices of secretary and treasurer need not be licensed.  If a lawyers' professional business organization had a single shareholder and single director prior to July 1, 1987, the person or persons holding the offices of vice-president and secretary need not be licensed, in which event the offices of president and treasurer shall be held by the sole shareholder as previously required by this rule.  An unlicensed person, even if permitted to serve as an officer pursuant to this rule, shall in no event serve as a director or be a shareholder of a lawyers' professional business organization.[2]

## II.  Discussion

Upon closer inspection, the above-identified portions of RSCH Rule 6 have been impliedly superseded by other court rules governing the organized practice of law to mean "in this state or in any other state or territory of the United States or the

---

[2]     The continued need for the remainder of RSCH Rule 6 is not addressed at this time.

District of Columbia." As will be discussed in further detail below, when the rule was first promulgated, it was clear that only Hawai'i-licensed attorneys could serve as partners or shareholders in Hawai'i law corporations. Two years later, however, this court's ethical rules governing the practice of law changed dramatically, to eliminate the requirement that only Hawai'i-licensed attorneys could serve as partners in Hawai'i law firms. RSCH Rule 6, however, remained the same in all material respects. This court went further to promulgate new rules that seemed to allow law firms practicing in Hawai'i to have non-Hawai'i-licensed members, as long as these firms noted the jurisdictional limitations of these attorneys on their letterheads and firm listings (HRCP Rule 7.5) and contributed to the IOLTA program (RSCH Rule 11(b)). (Even when related statutes changed to allow non-Hawai'i-licensed individuals to serve as shareholders, officers, directors, and partners within Hawai'i professional corporations and partnerships, RSCH Rule 6 still remained materially unchanged.) Thus, the above-identified portions of RSCH Rule 6, which prohibit non-Hawai'i-licensed attorneys from serving as directors or officers of Hawai'i law firms with a multi-jurisdictional presence, were repealed by implication by these related court rules. As such,

RSCH Rule 6 does not prohibit Dentons US LLP from practicing law in Hawaiʻi through its Hawaiʻi-licensed attorneys.

**A.   RSCH Rule 6's History**

RSCH 6 (initially numbered RSCH Rule 24) originated in a per curiam opinion of this court, Petition of the Bar Association of Hawaii, 55 Haw. 121, 516 P.2d 1267 (1973) (per curiam).  In that matter, the Hawaiʻi State Bar Association petitioned this court to allow the incorporation of attorneys under the newly enacted Professional Corporation Act, then HRS §§ 416-141 through 154.  55 Haw. at 121, 516 P.2d at 1267-68. This court was aware that attorneys sought to establish law corporations to benefit from federal tax advantages, but it was concerned that the Bar Association's proposed rule would limit malpractice liability of incorporated attorneys, contrary to the Uniform Partnership Act, the HCPR, and a state statute forbidding abridgment of the substantive rights of client-litigants.  55 Haw. at 122, 516 P.2d at 1268.  This court therefore adopted the rule, then numbered RSCH Rule 24, governing Professional Corporations, which read, in relevant part, as follows:

> **(b) Requirements for Issuance of Certificate of Registration.**  The clerk shall issue a Certificate of Registration to such corporation if its application shows that:
>> (1)  The applicant is organized and exists pursuant to Professional Corporation Law, HRS, Sections 416-

> 141 through 416-154, and is a professional corporation within the meaning of said law and complies with all the requirements of said law and this rule.
> (2)  Each shareholder, director and officer of the applicant is licensed to practice law in this state by this court. . . .
> **(c)  Shares; Ownership and Transfer.**
> (1)  Shares in a law corporation may be owned only by the corporation or by one or more persons licensed to practice law in this state by this court.
> . . . .
> **(j)  Compliance with Law and Rules of Court.**  A law corporation's affairs shall be conducted in compliance with law and with the rules of this court.  It shall be subject to the applicable rules and regulations adopted by, and the disciplinary powers of, this court.  Nothing in this rule shall affect or impair the disciplinary powers of this court over any law corporation or over any person licensed to practice in this state by this court.

RSCH Rule 24 (1979) (emphases added).  RSCH Rule 24 thus prohibited non-Hawai'i-licensed attorneys from serving as shareholders, directors, or officers of Hawai'i law corporations.

Contemporaneous provisions of the HCPR and the HRS provide a fuller picture of the jurisdictional limitations on organized law practice at that time.  Between 1970 and 1981, HCPR DR 2-102(D) stated, "A partnership shall not include any person not licensed to practice law in the courts of the State of Hawaii." EC 2-11 likewise provided, "No partnership for the practice of law in the State of Hawaii may include a member who is not admitted to practice in the courts of the State of Hawaii." Similarly, HRS § 416-146 (1976) required that "[s]hares of capital in a professional corporation . . . be issued only to a licensed person. . . ." with "licensed person" referring to the attorney licensing provisions in HRS Chapter 605, which

11

pertained only to Hawai'i licensure by this court. Thus, it seems clear that at that time, <u>all</u> law partners, shareholders, officers, and directors had to have been Hawai'i-licensed attorneys.

**B.   RSCH Rule 6's Inconsistency with Related Court Rules and Statutes**

Just two years following RSCH Rule 24's adoption, however, inconsistencies between the rule and other court rules appeared. HCPR DR 2-102(D) and EC 2-11 were amended to delete the requirement that every partner in a law firm be licensed to practice law in Hawai'i. The 1981 amendment to HCPR DR 2-102(D) stated the following, which allowed, with conditions, Hawai'i law firm ownership by Hawai'i-licensed and non-Hawai'i-licensed attorneys:

> A law firm shall not be formed or continued between or among lawyers licensed in different jurisdictions unless all enumerations of the partners, associates, and "of counsel" lawyers of the firm on its letterhead and in other permissible listings <u>make clear the jurisdictional limitations on those partners, associates, and "of counsel" lawyers of the firm not licensed to practice in all listed jurisdictions.</u>

(Emphasis added.)[3]  Likewise, the 1981 amendment to EC 2-11 deleted the sentence, "No partnership for the practice of law in

---

[3]    In 1994, the HCPR was replaced by the Hawai'i Rules of Professional Conduct ("HRPC"); Rule 2-102(D) was replaced with the "identical" HRPC Rule 7.5(e), which provided the following, which, again, allowed, with conditions, law firms to be owned by non-Hawai'i-licensed and Hawai'i-licensed attorneys practicing in Hawai'i:

(continued. . .)

the State of Hawaii may include a member who is not admitted to practice in the courts of the State of Hawaii." These changes to court rules are clearly inconsistent with the prohibitions within RSCH Rule 6 against non-Hawai'i-licensed attorneys serving as directors or officers within Hawai'i law firms that have a multi-jurisdictional presence. Where court rules conflict in this way, the later rules prevail. See, e.g., Bank of America v. Reyes-Toledo, 143 Hawai'i 249, 257, 428 P.3d 761, 769 (2018) ("[W]hen interpreting rules promulgated by the court, principles of statutory construction apply.") (citations omitted); HRS § 1-9 (2009) ("The repeal of a law is . . . implied when the new law contains provisions contrary to, or irreconcilable with, those of the former law."); Wahiawa Sugar Co. v. Waialua Agric. Co., 13 Haw. 109, 110, 1900 WL 2519, 1 (Haw. Terr. 1900) (acknowledging that "repeals by implication are not favored," but, as between two versions of a statute that conflict, the latter must prevail over the former). Although repeal or supersession of rules by implication is not favored, in this

---

(continued. . .)
> A law firm shall not be formed or continued between or among lawyers licensed in different jurisdictions unless all enumerations of the partners, associates, and "of counsel" lawyers of the firm on its letterhead and in other permissible listings make clear the jurisdictional limitations on those partners, associates, and "of counsel" lawyers of the firm not licensed to practice in all listed jurisdictions.

(Emphasis added.)

case, the inconsistency between the changes to court rules and the relevant portions of RSCH Rule 6 is so clear, and there is no rational basis for harmonizing the inconsistencies, that supersession by implication exists.  See Fuentes v. Workers' Comp. Appeals Bd., 16 Cal.3d 1, 7, 547 P.2d 449, 453 (1976) ("Repeals by implication are not favored, and are recognized only when there is no rational basis for harmonizing two potentially conflicting laws.").

RSCH Rule 6(e) and (f)[4] also became inconsistent with related statutes governing professional corporations.  The Legislature replaced HRS Chapter 416 with Chapter 415A in 1985. 1985 Haw. Sess. Laws Act 259 at 495-504.  Section 9(a) of the newly enacted chapter provided that non-Hawai'i-licensed professionals could own shares in Hawai'i professional corporations or serve as partners alongside Hawai'i-licensed professionals:

> A professional corporation may issues shares, fractional shares, and rights or options to purchase shares only to:
> (1) Natural persons who are authorized by law in this State or in any other state or territory of the United States or the District of Columbia to render a professional service permitted by the articles of incorporation of the corporation; and
> (2) General partnerships in which all the partners are qualified persons with respect to such professional corporation and in which at least one partner is authorized by law in this State to render a professional service permitted by the articles of incorporation of the corporation.

---

[4]  RSCH Rule 24 was renumbered RSCH Rule 6 in 1984.

1985 Haw. Sess. Laws Act 259 § 9 at 497-98 (emphases added).[5, 6]

In September 1987, prompted by the repeal of HRS Chapter 416 (the Hawai'i Professional Corporation Law) and its replacement by HRS Chapter 415A (the Hawai'i Professional Corporation Act), RSCH Rule 6 was extensively amended, more closely resembling, sub-section by sub-section, the rule in place today:

> **(a) Compliance with this Rule and the Hawaii Professional Corporation Act.**  Any person or persons seeking to practice law as a corporation shall comply with the provisions of this rule and the Hawaii Professional Corporation Act, HRS Chapter 415A.
> . . . .

---

[5]   Very shortly afterward, the first provision was amended to allow corporations to issue shares, fractional shares, and rights of options to purchase shares only to "individuals," instead of "natural persons," "authorized by law in this State or in any other state or territory of the United States or the District of Columbia to render a professional service permitted by the corporation's articles of incorporation." 1987 Haw. Sess. Laws Act 135, § 115 at 271.  The legislature deleted the second provision regarding general partnerships owning shares where at least one partner is authorized by law in this State.  Id.

[6]   Section 9(b) of the newly enacted chapter also provided, however, that a "licensing authority for any profession," such as this court over the legal profession, can "further restrict, condition, or abridge the authority of professional corporations to issue shares" where it is deemed "necessary . . . to prevent violations of the ethical standards of such profession. . . ." 1985 Haw. Sess. Laws Act 259 § 9 at 498.  As such, this provision, codified as HRS § 415A-9(b), recognizes the inherent authority of this court to regulate the practice of law.  See In re Ellis, 53 Haw. 23, 25 n.1, 487 P.2d 286, 287 n.1 (1971) ("This court has inherent power to regulate matters before it regarding the practice of law.") (quoting Hawai'i Constitution, article V, section 1, which vests judicial power in the courts).  Thus, section 9(b) does not purport to affect this court's authority to prohibit non-Hawai'i-licensed attorneys from serving as directors or officers of Hawai'i law firms with a multi-jurisdictional presence.  As we have already noted, however, it appears that this court's later-enacted rules contemplating multi-jurisdictional law practice in Hawai'i repealed, by implication, those parts of RSCH Rule 6(e) and (f) prohibiting non-Hawai'i-licensed attorneys from serving as officers and directors of Hawai'i law firms.

> **(d) Shares; Ownership and Transfer.**
> (1)  Shares in a law corporation may be owned only by the corporation or by one or more persons licensed to practice law in this state by this court. . . .
> . . . .
> **(e) Directors.**  Notwithstanding the provisions of HRS § 415A-14, each director of a law corporation shall be licensed to practice law in this state by this court. . . .
> . . . .
> **(f) Officers.**  Notwithstanding the provisions of HRS § 415A-14, each officer of a law corporation shall be licensed to practice law in this state by this court. . . .
> . . . .
> **(h)  Compliance with Law and Rules of Court.**  A law corporation's affairs shall be conducted in compliance with law and with the rules of this court.  It shall be subject to the applicable rules and regulations adopted by, and all the disciplinary powers of, this court.  Nothing in this rule shall affect or impair the disciplinary powers of this court over any law corporation or over any person licensed to practice in this state by this court.

RSCH Rule 6 (1987).

As argued by CIT Bank, the plain language of RSCH Rule 6(d) appears to allow Dentons to practice law in Hawai'i as a lawyers' professional business organization.  RSCH Rule 6(d)(1) states, in relevant part, "Shares or interests in a lawyers' professional business organization may be owned only by a lawyers' professional business organization or by one or more persons licensed to practice law in this state by this court. . . ."  Contrary to Sheveland's assertion, the word "only" modifies the two forms of share ownership that are allowed: one, by a lawyer's professional business organization, or two, by "one or more persons licensed to practice law in this state by this court. . . ."  According to Paul Alston, Dentons US LLP is owned in part by individual Hawai'i-licensed attorneys formerly from AHFI who have individually incorporated as each's

16

own lawyer's professional business organization.  See

Declaration of Alston ("It was further determined that any

concerns about RSC[H] 6 could also be addressed by having the

lawyers who were to become partners in Dentons US LLP form their

own individual law corporations and have those corporations

become partners in Dentons.  In that way, consistent with the

language of RSC[H] 6, the interests in Dentons US LLP (a

"lawyer's professional business organization") are owned by

other "lawyers' professional business organizations" – i.e., our

individual law corporations.").  Thus, Dentons US LLP shares or

interests, owned by each former AHFI partner's lawyer's

professional business organization, satisfies RSCH Rule 6(d)(1).

Even if the former AHFI partners who are now Dentons US LLP

partners are viewed as individuals instead of law corporations,

there is still no violation of RSCH Rule 6(d)(1), as Dentons US

LLP would be owned "by one or more persons licensed to practice

law in this state by this court. . . ."  This is because shares

or interests in Dentons US LLP are owned by one or more Hawai'i-

licensed attorneys:  the former AHFI partners.  Thus, RSCH Rule

6 is no impediment to the former AHFI partners' practice of law

in Hawai'i as part of Dentons US LLP.[7]

---

[7]     Even after the amendments to court rules authorizing law practice
ownership by non-Hawai'i-licensed and Hawai'i-licensed attorneys, the
provisions of RSCH Rule 6 currently at issue remained substantively unchanged
for over three decades.  During this period, RSCH Rule 6 was amended multiple
(continued. . .)

**C.** **Concerns about the Conduct of non-Hawai'i-Licensed Attorneys within Hawai'i Lawyers' Professional Business Organizations**

Finally, we also address Sheveland's concern that non-Hawai'i-licensed attorneys, in Hawai'i firms with a multi-jurisdictional presence, may direct the conduct of Hawai'i-licensed attorneys in a manner free from oversight by this court or the Office of Disciplinary Counsel. For the following

___

(continued. . .)
times, but never to account for the changing regulatory landscape surrounding organized law practice in Hawai'i. First, in 1995, RSCH Rule 6(a) was amended to include organized law practice in the form of partnerships, as follows (with new material underscored):

> (a) Compliance With this Rule and Either the Hawai'i Professional Corporation Act or the Hawai'i Partnership Act. Any person or persons seeking to practice law as a corporation or in partnership shall comply with the provisions of this rule and either the Hawai'i Professional Corporation Act, HRS Chapter 415A, or the Hawai'i Partnership Act, HRS Chapter 425 or both, if applicable.

(We note that, despite the express addition of "partnership" as an organizational form for law practice, Rule 6(d)(1), (e), and (f) still referred to only the corporate concepts of shares, directors, and officers, and not partnership concepts.)

Second, in 1999, RSCH Rule 6 was amended to introduce the term "lawyer's professional business organization" to cover law practiced in the form of a "corporation, a company, an association," or a "partnership." RSCH Rule 6(a) was also amended to require compliance with the rest of the provisions of RSCH Rule 6 as well as "any applicable statutes," instead of expressly referencing HRS Chapters 415A and 425 (governing corporations and partnerships, respectively) as it once had.

Lastly, in 2001, RSCH Rule 6(d)(1) was amended slightly to delete the bracketed "the" and replace it with the underscored "a", as follows: "Shares or interests in a lawyer's professional business organization may be owned only by [the] a lawyer's professional business organization or by one or more persons licensed to practice law in this state by this court. . . ." RSCH Rule 6 has not changed since this 2001 amendment.

The relevant portions of RSCH Rule 6 (e) and (f) did not appropriately evolve in response to dramatic changes to related court rules contemplating the inclusion of non-Hawai'i-licensed attorneys in Hawai'i lawyers' professional business organizations with a multi-jurisdictional presence. Thus, for the reasons stated in this opinion, RSCH Rule 6 is no impediment to the former AHFI partners' practice of law in Hawai'i as part of Dentons US LLP.

reasons, HRS § 605-14 would still prohibit non-Hawai'i-licensed attorneys from doing so within this jurisdiction.

Fought & Co. v. Steel Eng'g and Erection, Inc., 87 Hawai'i 37, 951 P.2d 487 (1998), is instructive on this issue. In that case, the Department of Transportation withheld payment for a Kahului Airport construction project from a general contractor, who, in turn, withheld payment from its subcontractor, who, in turn, withheld payment from its subcontractor, Fought & Co. ("Fought"), a company headquartered in Oregon, which employed Oregon-licensed general counsel. 87 Hawai'i at 41-42, 43, 951 P.2d at 491-92, 493. Fought initiated a contract action in Hawai'i through Hawai'i-licensed local counsel, who filed all briefs and made all court appearances in Hawai'i courts. 87 Hawai'i at 44-45, 48, 951 P.2d at 494-95, 498. Fought's general counsel assisted local counsel by preparing the company's statement of position in anticipation of mediation, consulting and strategizing on the appeal, conducting legal research and reviewing the briefing of local counsel and other parties to the litigation, and resolving issues pertaining to the posting of another party's supersedeas bond. 87 Hawai'i at 46, 951 P.2d at 496. While we concluded Fought's general counsel was indeed engaged in the practice of law, we held that it was not the

"unauthorized practice of law" because it did not take place within this jurisdiction.  Id.

We reasoned that Fought's general counsel represented an Oregon corporation, rendered all legal services in Oregon, did not draft or sign any of the court filings, did not appear in Hawai'i courts, and did not communicate with counsel for other parties on Fought's behalf.  87 Hawai'i at 48, 951 P.2d at 498. In sum, we concluded that Fought's general counsel's "role was strictly one of consultant to Fought and Fought's Hawai'i counsel."  Id.  We emphasized that "Fought's Hawai'i counsel were at all times 'in charge' of Fought's representation within the jurisdiction so as to insure that Hawai'i law was correctly interpreted and applied."  Id.  Non-Hawai'i-licensed attorneys within Dentons US LLP must comply with HRS § 605-14 and Fought.

### III.  Conclusion

We hold that the portions of RSCH Rule 6 identified in Section I have been superseded by implication to mean "in this state or in any other state or territory of the United States or

the District of Columbia" and do not prohibit the former AHFI

partners' practice of law in Hawai'i as part of Dentons US LLP.

| | |
|---|---|
| James J. Bickerton, | /s/ Mark E. Recktenwald |
| Stanley H. Roehrig, and | |
| Bridget G. Morgan | /s/ Paula A. Nakayama |
| Bickerton Dang, LLLP | |
| | /s/ Sabrina S. McKenna |
| John F. Perkin | |
| Perkin & Faria, LLLC | /s/ Richard W. Pollack |
| | |
| Van-Alan H. Shima | /s/ Michael D. Wilson |



Van-Alan H. Shima
Affinity Law Group, LLLC
for plaintiff-appellant
Stephanie Sheveland

Michael C. Bird and
Summer H. Kaiawe
for defendant-appellee
Wells Fargo Bank, N.A.

Charles A. Price
Koshiba Price & Gruebner
for defendants-appellees
Masood M. Foadi and
Fahi S. Foadi

Judy A. Tanaka,
Pamela W. Bunn, and
Meredith G. Miller
Dentons US LLP

Julie B. Strickland
Stroock & Stroock & Lavan LLP
(admitted pro hac vice)
for defendants-appellees
CIT BANK, N.A., f/k/a
OneWest Bank, FSB, and
OWB REO LLC

Steven M. Egesdal,
Tom E. Roesser, and
Daniel J. Padilla
Carlsmith Ball LLP
for amicus curiae